

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,157

### ARMANDO LEZA, Appellant

### v.

### THE STATE OF TEXAS

### ON DIRECT APPEAL FROM CAUSE NO. 2007-CR-4563A
### IN THE 187TH JUDICIAL DISTRICT COURT
### BEXAR COUNTY

**PRICE, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

The appellant was convicted of intentional murder committed in the course of a robbery, a capital offense,[1] and the jury answered the statutory special issues in such a way that the trial court was obliged to assess the death penalty.[2] Direct appeal is automatic in this

---

[1] TEX. PENAL CODE § 19.03(a)(2).

[2] TEX. CODE CRIM. PROC. art. 37.071, §§ 2(b) & 2(e)(1).

Court.[3] In fourteen points of error, the appellant contends that the trial court erred in various respects. We disagree and find his contentions to be without merit. We will therefore affirm the judgment of conviction and sentence of death.

The State's evidence at trial showed generally that the appellant and his girlfriend, Dolores Trevino, were admitted to the apartment of Caryl Jean Allen, a semi-invalid, in the early morning hours of April 4, 2007. Both the appellant and Trevino were staying with the appellant's sister in the same apartment complex, and Allen had helped them out in the past by giving them rides. When Allen refused on this occasion to provide them with money with which to buy drugs, they tied her up on the floor of her bedroom. One or both of them then cut her throat and stabbed her in the chest with a kitchen knife. Each wound was fatal. They took a number of items from the apartment, commandeered Allen's car, pawned the items they had stolen, and then set fire to and abandoned Allen's car. Both were arrested within forty-eight hours of the offense, albeit for traffic warrants, and questioned at the homicide office of the San Antonio Police Department. In the video recording of his interrogation, having been urged by the interrogating officer that it was unmanly to allow his girlfriend to take responsibility for the murder component of the offense, the appellant eventually admitted that he had been the one to cut Allen's throat.[4] In a general verdict that did not specify whether it believed the appellant to be the principal actor or a party to Allen's

---

[3]

TEX. CODE CRIM. PROC. art. 37.071, § 2(h).

[4]

The appellant was never asked, and did not offer, to give a written statement.

murder, the jury found the appellant guilty and, upon hearing additional evidence at the punishment phase about his prior criminal history and behavior while previously incarcerated, answered the special issues in such a way as to mandate the death penalty. The appellant does not now challenge the sufficiency of the evidence in any respect. In addressing the appellant's fourteen points of error on appeal, we will examine the evidence in greater detail as appropriate.

## ADMISSIBILITY OF ORAL STATEMENTS

In his first and second points of error, the appellant contends that the trial court erred in failing to suppress his video-recorded oral statement. He argues that admission of this recorded oral statement violated both federal law under *Miranda v. Arizona*,[5] and state law under Article 38.22 of the Code of Criminal Procedure.[6]

---

[5]

384 U.S. 436 (1966). *Miranda* held that a suspect in police custody

must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the [suspect] may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

*Id.* at 479.

[6]

TEX. CODE CRIM. PROC. art. 38.22.

## Waiver of *Miranda* Rights

In his first point of error, the appellant makes no argument that his oral statement was itself coerced in any way such that its admission into evidence would violate due process. Nor does he challenge the adequacy of the *Miranda* warnings that were administered to him before he made the statement, designed to protect his constitutional right to silence and his privilege against compelled self-incrimination. He does not even deny that he, at least implicitly, waived his right to silence by signing a written form to indicate that he understood his *Miranda* rights and then responding to police questioning anyway.[7] Instead, he asserts that his apparent waiver of *Miranda* rights was, in reality, neither voluntary nor knowing and intelligent. He complains that he was not informed of the true object of the interrogation and was under the influence of heroin at the time the *Miranda* warnings were administered, which prevented him from comprehending their significance and/or overbearing his resistance to waiving them.[8] On direct appeal, we measure the propriety of the trial court's

---

[7] *See Berghuis v. Thompkins*, 130 S.Ct. 2250, 2262 (2010) ("As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford."); *Joseph v. State*, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010) ("The question is not whether Appellant 'explicitly' waived his *Miranda* rights, but whether he did so knowingly, intelligently, and voluntarily.").

[8] At the pre-trial hearing on the appellant's motion to suppress, he challenged the admissibility not only of the video-recorded oral statement, but also of an oral statement he made to an escort officer who had taken him out for a restroom and cigarette break during the course of the three-hour interrogation session. The trial court ruled that the State could offer both the video-recorded statement and testimony as to the oral statement made during the restroom/cigarette break, expressly finding that the latter was not the product of custodial interrogation. Both oral statements were introduced at trial. On appeal, however, the appellant does not challenge the admissibility of the oral

ruling with respect to alleged *Miranda* violations under the totality of the circumstances, almost wholly deferring to the trial court on questions of historical fact and credibility, but reviewing *de novo* all questions of law and mixed questions of law and fact that do not turn on credibility determinations.[9] By this standard, we hold that it was within the discretion of the trial court to conclude that the appellant's waiver was both voluntary and knowing and intelligent.

It is the State's burden to establish a valid waiver of *Miranda* rights by a preponderance of the evidence.[10] There are two facets to any inquiry with respect to the adequacy of a purported waiver of *Miranda* rights:

> First, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second the waiver must be made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it."[11]

Before it may be said that a waiver of a *Miranda* right is involuntary, however, there must

---

statement made during the restroom/cigarette break. His first two points of error expressly allude only to the admissibility of the video-recorded oral statement. While he mentions the oral statement made during the restroom/cigarette break in passing in his factual recitation with respect to his first point of error, he fails to include any independent argument why it was erroneously admitted. We therefore express no opinion with respect to that issue.

[9]

*Ripkowski v. State*, 61 S.W.3d 378, 381-82 (Tex. Crim. App. 2001).

[10]

*Joseph v. State*, *supra*, at 24.

[11]

*Ripkowski v. State*, *supra*, at 384 (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (footnotes omitted)).

be some element of official intimidation, coercion, or deception.[12]  And, with respect to the requirement that the waiver also be knowing and intelligent,

> [o]nce it is determined that a suspect[ ] . . . at all times knew he could stand mute . . ., and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.[13]

It will suffice to render a waiver knowing and intelligent, in other words, that the accused has been made aware, and fully comprehends, that he has the right to remain silent in the face of police interrogation and to discontinue the dialogue at any time, and that the consequence of his waiver is that his words may be used against him later in a court of law.[14]

It is true, as the appellant contends, that none of the interrogating officers expressly informed him that the subject of the interrogation would be, not the traffic infraction for which he was arrested, but the capital murder of which he was suspected.  But this circumstance is patently insufficient, as a matter of law, to render his waiver of *Miranda* rights either involuntary or insufficiently informed.  The Supreme Court of the United States has expressly determined that "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect

---

[12] *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986);  *Oursbourn v. State*, 259 S.W.3d 159, 170 (Tex. Crim. App. 2008).

[13] *Moran v. Burbine*, 475 U.S. 412, 422-23 (1986).

[14] *Ripkowski v. State*, *supra*, at 384 n.10 (citing *Colorado v. Spring*, *supra*, at 574).

voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege."[15] After all, the appellant *was* expressly informed that "*anything*" he said may be used against him,[16] and the interrogating officers said and did nothing that could reasonably have deceived him into believing otherwise. Indeed, it became obvious to the appellant immediately after the *Miranda* warnings were administered that the interrogators had no interest in questioning him about the traffic warrant and wanted only to elicit a statement about the murder. It is inconceivable that the appellant could have been tricked into thinking that the warnings that had just been read to him, and which he had just acknowledged, applied only to questioning about traffic infractions, about which the police displayed no interest at all.

The other circumstance upon which the appellant relies—that he was under the influence of heroin when the *Miranda* warnings were administered—is equally unavailing. First, the appellant's assertion that his heroin intoxication rendered his apparent waiver involuntary is foreclosed as a matter of law, at least as a matter of federal constitutional law. Although the record demonstrates that the police were told shortly after the interrogation began that the appellant had "shot up" with heroin just before he was arrested, any tendency that the influence of heroin may have had to overbear his will to resist waiving his *Miranda*

---

[15] *Colorado v. Spring*, *supra*, at 577.

[16] *Id*. ("This Court's holding in *Miranda* specifically required that the police inform a criminal suspect that he has the right to remain silent and that *anything* he says may be used against him. There is no qualification of this broad and explicit warning. The warning, as formulated in *Miranda*, conveys to a suspect the nature of his constitutional privilege and the consequences of abandoning it.").

rights was due to no causative action on the part of the police, and therefore cannot serve to undermine the voluntariness of his subsequent statements for Fifth Amendment purposes. The Fifth Amendment privilege against self-incrimination, we have recognized, "is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.' If the appellant's [drug] use . . . alone impelled him to confess, that is of no constitutional consequence."[17]

The appellant's heroin use *does* have a bearing on his comprehension, however, and is a factor that is relevant to determining whether this *Miranda* waiver was knowing and intelligent.[18] We cannot reject the appellant's argument in this regard, then, as a matter of law. At the pre-trial hearing on the appellant's motion to suppress, he presented an expert in behavioral pharmacology who testified that, in his opinion, the appellant was obvioiusly under the influence of heroin intoxication during the interrogation. And while that influence seemed to dissipate over the course of the three-hour interrogation, at least at the outset, when the *Miranda* warnings were administered and the appellant signed the acknowledgment of those warnings ostensibly indicating that he understood them, the appellant's capacity to pay attention and make informed decisions based on the information that was being imparted to him was impaired. But the trial court was not obliged to credit this testimony over that of

---

[17] *Ripkowski v. State*, *supra*, at 384 (quoting *Colorado v. Connelly*, *supra*, at 170).

[18] *Id.* (drug use, though not relevant to voluntariness query, *is* relevant to whether the accused "was aware of his rights and of the consequences of waiver.").

the detaining and interrogating officers. They maintained at the pre-trial hearing, as had the "various" police officers who testified in *Ripkowski*,[19] that the appellant was awake and alert, appeared to comprehend the warnings and the questions propounded to him, and was coherent and appropriate in his responses;[20] and that, moreover, in light of their prior experience in dealing with heroin users, the appellant did not appear to them to be under its influence *at all*, much less to the extent that he could not comprehend the proceedings.[21] As in *Ripkowski v. State*, here "the trial court was entitled to believe the State's witnesses rather than [the] appellant's expert."[22] We cannot say that the trial court erred to conclude that the State satisfied its burden by a preponderance of the evidence to establish a valid waiver, and thus to deny the appellant's motion to suppress to the extent it was based on federal constitutional law.[23] We overrule the appellant's first point of error.

---

[19] *Id*.

[20] Although we defer to the trial court's credibility determination, we observe that our own review of the recorded oral statement supports the interrogating officers' assertions in this respect.

[21] Other than the appellant's own assertion, memorialized in the recorded oral statement, that he had "just shot up heroin," the police officers had no indication that he was presently under its influence. None thought that he appeared to be in any way intoxicated.

[22] *Ripkowski v. State*, *supra*, at 384.

[23] The appellant does not invoke comparable provisions of the Texas Constitution in this or any other point of error challenging the admissibility of his oral statements.

**Waiver of Rights Under Article 38.22**

Under Article 38.22, Section 3(a)(2) of the Code of Criminal Procedure, before an oral recorded statement may be admitted into evidence, the State must show, *inter alia*, that "prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning."[24] The functional equivalent of this warning was administered to the appellant,[25] and he does not now contend otherwise. Insofar as we can tell from his

---

[24] TEX. CODE CRIM. PROC. art. 38.22 § 3(a)(2). The warning prescribed in Section 2(a) includes the following:

> (1) [The accused] has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> * * *
>
> (5) he has the right to terminate the interview at any time[.]

[25] The warnings card, which the principal interrogating officer expressly read aloud to the appellant before obtaining his signature as an indication that he understood them, reads in relevant part:

> Before you are asked any questions, it is my duty as a police officer to advise you of your rights and to warn you of the consequences of waiving those rights.
>
> 1. You have the right to remain silent.
>
> 2. You do not have to make a statement, oral or written, to anyone.
>
> 3. Any statement that you make will be used in evidence against you in a court of law at your trial.
>
> * * *

brief, the appellant makes two challenges under state law. First, he argues that his waiver of these statutorily prescribed rights was not voluntary, knowing and intelligent, for the same reasons he asserted with respect to the purported waiver of his *Miranda* rights. For reasons we have already explained, the failure to immediately inform the appellant of the subject of the interrogation impacted neither the voluntariness nor the knowing and intelligent nature of any waiver of his statutory rights—as a matter of law. Nor, for reasons we have also explained, did the trial court err to conclude that the possibility that the appellant was under the influence of heroin had no impact on the knowing and intelligent nature of any waiver of his statutory rights. However, to decide whether the trial court may have erred to conclude that heroin intoxication did not impact the *voluntariness* of the appellant's waiver with respect to his statutory rights, we must undertake some additional analysis.

As we have noted, for purposes of the Fifth Amendment, waiver of the privilege against compelled self-incrimination during custodial questioning can be deemed involuntary only if it is a product of official coercion, intimidation, or deception. In *Oursbourn v. State*, however, we recognized that a claim that a purported waiver of the *statutory* rights enumerated in Article 38.22 is involuntary "need not be predicated on police overreaching."[26]

---

6. If you decide to talk with anyone, you can, and you can stop talking to them at any time you want.

7. The above rights are continuing rights which can by urged by you at any stage of the proceedings.

[26] 259 S.W.3d at 172.

Circumstances unattributable to the police that nevertheless adversely impact an accused's ability to resist reasonable police entreaties to waive his statutory rights, such as intoxication, are "factors" in the voluntariness inquiry, though they "are usually not enough, by themselves, to render a statement inadmissible under Article 38.22[.]"[27] The officer who read the appellant his rights and conducted the bulk of the interrogation testified that she used no force or threats with the appellant, that he did not seem to her to be at all intoxicated, and that his ongoing cooperation in the interrogation appeared to her to be wholly voluntary. The trial judge reviewed the recording of the interrogation and could measure the officer's perceptions with respect to the voluntariness of the appellant's waiver for himself. Moreover, even the appellant's expert acknowledged that, at least by the time the appellant ultimately admitted his role in the offense, several hours into the interview, he "was not intoxicated and impaired in judgment and decision making." The expert could not say exactly how soon before the interrogation began that the appellant may have actually ingested heroin. From all these circumstances, we think the trial court could rationally conclude that the appellant's heroin intoxication, if any, at the beginning of the interview when his statutory rights were read to him and the interrogation began, was not so acute as to overcome his capacity to resist reasonable, non-coercive tactics by the police to persuade him to waive his statutory rights. The trial court's conclusion that the appellant's waiver of his Article 38.22 rights was voluntary is supported by the record, and we defer to it.

---

[27] *Id*. at 173.

In his second challenge under this point of error, the appellant also appears to argue that Article 38.22 was violated in that the police failed to obtain an *express* waiver on the recording of the oral statement itself, as required by Section 3(a)(2). The appellant never presented this particular argument in the trial court for a ruling, however, and so he has not preserved it for appeal.[28] In any event, we have consistently held that waiver of Article 38.22 rights "may be inferred from actions and words of the person interrogated."[29] While we have also said that such implied waivers are not to be preferred,[30] we have acknowledged that it is within a trial court's discretion to rely upon an implied waiver whenever the totality of the

---

[28] See TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and . . . the trial court . . . ruled on the request, objection, or motion, either expressly or implicitly[.]"). In his written motion to suppress, the appellant did contend, *inter alia*, that his oral statement was "not taken in compliance with Article 38.22, § 3 of the Texas Code of Criminal Procedure," but he did not specify what aspect of Section 3 was not satisfied. At the conclusion of the pre-trial hearing, counsel for the appellant argued only that the appellant "was under the influence of heroin at the time he was interviewed, that he was not capable of processing information, did not fully understand the warnings that were given to him, and did not knowingly and voluntarily waive his rights under Miranda and 38.22." He did not argue to the trial court that the oral recorded statement should, moreover, be suppressed because no *express* waiver actually appears on the recording as specifically required by Article 38.22, Section 3(a)(2).

[29] *Barefield v. State*, 784 S.W.2d 38, 41 (Tex. Crim. App. 1989). *See also Etheridge v. State*, 903 S.W.2d 1, 16-17 (Tex. Crim. App. 1994) (expressly declining to overrule *Barefield*, and finding an implied waiver where the accused was informed of his rights, declared that he understood them, and agreed to continue with questioning); *Rocha v. State*, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000) (following *Etheridge*).

[30] *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988).

circumstances, as reflected by the recording of the oral statement, supports it.[31]  This construction of the statute, although it has been criticized by some,[32] has the virtue of being consistent with the Supreme Court's most recent pronouncement with respect to what may serve to constitute an implied waiver of the Fifth Amendment right to remain silent.[33]  We overrule the appellant's second point of error.

## GRAND JURY INVOLVEMENT

In his multifarious third point of error, the appellant asserts that the trial court should have either precluded the State from seeking the death penalty, or at least quashed the indictment against him, on the ground that there was no grand jury involvement in the decision to pursue the death penalty against him.  His argument is predicated on *Apprendi*

---

[31]

*Joseph v. State*, *supra*, at 25-26 n. 7 ("[I]n a case where there is no express waiver, we search not for a specific moment, but for a collective body of facts representing the interrogation as a whole"); *id*. at 28-30 (Cochran, J., concurring) (trial court may infer waiver for purposes of Article 38.22 where the accused's post-warning conduct is wholly consistent, under all the circumstances, with waiver, but such cases are usually "close" and a reviewing court should defer to the trial court's conclusion regardless of whether the trial court finds waiver).

[32]

*See*, *e.g.*, George E. Dix & John M. Schmolesky, 41 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 16:96 (3d ed. 2011), at 136-7 (observing that our case law "assumes that the rule that waiver may be implied means that an implied waiver is proved by evidence that the accused was admonished of his rights and then made the statement without affirmatively demanding that those rights be respected.  This simply cannot be the case.  At a bare minimum, an implied waiver . . . should require that the accused, after being admonished . . ., was asked in substance whether he nevertheless was willing to submit to questioning or to discuss the matter with the officer").

[33]

*See Berghuis v. Thompkins*, *supra* ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.");  *id*. at 2264 ("In sum, a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police.").

*v. New Jersey*,[34] and its progeny, as well as various provisions of the federal bill of rights, including the Sixth Amendment right to jury trial, the Eighth Amendment prohibition against cruel and unusual punishment, and the Fourteenth Amendment Equal Protection Clause.[35] The appellant identifies no portion of the record in which he sought *either* form of relief from the trial court on the basis of *any* of these asserted grounds, and we are unable to find any.[36] Nor does he maintain that his arguments are not subject to ordinary principles of procedural default, in line with the regime this Court outlined in *Marin v. State*.[37] Even if his claims should have been preserved for appellate review, moreover, the appellant frankly acknowledges that we have rejected his present arguments on numerous occasions in the past.[38] Likewise rejecting them today, we overrule the appellant's third point of error.

## JURY CHARGE ERRORS

### Guilt Phase Special Issue

In his fourth point of error, the appellant makes a multifarious argument the gist of which seems to be that the trial judge erred in failing to submit a special-issue jury instruction

---

[34] 530 U.S. 466 (2000).

[35] U.S. CONST. amends. VI, VIII, & XIV, § 1.

[36] TEX. R. APP. P. 33.1(a).

[37] 851 S.W.2d 275 (Tex. Crim. App. 1993).

[38] *See Roberts v. State*, 220 S.W.3d 521, 535 & n.51 (Tex. Crim. App. 2007).

at the guilt phase of trial. This special issue, he urges, would have assured satisfaction of both the Eighth Amendment requirement of a minimum threshold culpable mental state to justify the death penalty, under *Tison v. Arizona*,[39] and the Sixth Amendment requirement that the jury make every factual determination necessary to establish *Tison*'s constitutional baseline for capital punishment, embodied in *Apprendi v. New Jersey* and its progeny.[40] The jury was instructed at the *punishment phase*, however, in accordance with Article 37.071, Section 2(b)(2) of the Code of Criminal Procedure,[41] and by its punishment verdict it found that the appellant either "actually caused the death of [Allen] or did not actually cause the death of [Allen] but intended to kill [Allen] or anticipated that a human life would be taken." We have held that this finding satisfies the dictates of *Tison*,[42] and nothing we discern in *Apprendi* or its progeny requires that the jury determination of baseline facts to justify

---

[39]

  481 U.S. 137 (1987).

[40]

  530 U.S. 466 (2000); *Ring v. Arizona*, 536 U.S. 584 (2002).

[41]

   *See* TEX. CODE CRIM. PROC. art. 37.071, § 2(b)(2) ("On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury: * * * [I]n cases in which the jury charge at the guilt or innocence stage permitted the jury to find the defendant guilty as a party under Sections 7.01 and 7.02, Penal Code, whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.").

[42]

   *See Ladd v. State*, 3 S.W.3d 547, 573 (Tex. Crim. App. 1999) ("Article 37.071, § 2(b)(2), allows the death penalty for defendants who participate in a crime and who actually anticipate that a human life will be taken. *Anticipating that a human life will be taken* is a highly culpable mental state, at least as culpable as the one involved in *Tison v. Arizona*, and we hold that, according to contemporary social standards, the death penalty is not disproportionate for defendants with such a mental state.").

imposition of the death penalty must necessarily occur at the guilt phase of trial. Accordingly, without reaching the State's contention that the appellant has procedurally defaulted any such jury-charge error by failing to preserve it by request or objection at trial,[43] we overrule the appellant's fourth point of error.

## Jury Unanimity

In point of error five, the appellant contends that the trial court committed reversible error in failing to require jury unanimity at the guilt phase of trial with respect to whether he was guilty, if at all, as a principal actor or as a party to the offense. The jury charge authorized the jury to convict the appellant if he was the principal actor or a party under either Section 7.02(a)(2) or Section 7.02(b) of the Penal Code,[44] but it did not require the jury to specify under which of these theories of criminal responsibility, if any, it found him liable. To whatever extent that the appellant has preserved, or is required to preserve, his arguments

---

[43] The State cites *Ladd v. State*, *supra*, at 564, for the proposition that, because the appellant's claim of jury-charge error is of constitutional dimension, he was required to preserve it in the trial court, notwithstanding *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (opinion on State's motion for reh'g). However, less than a year after *Ladd* was decided, we issued our opinion in *Jimenez v. State*, 32 S.W.3d 233 (Tex. Crim. App. 2000), in which we held (without reference to *Ladd*) that jury-charge error of constitutional dimension may still be assayed for egregious harm under *Almanza*, regardless of whether there was a corresponding objection in the trial court.

[44] TEX. PENAL CODE § 7.02(a)(2) & (b) ("A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or . . . [i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.").

for appeal,[45] we hold that there was no error in the jury charge in any event.

Both Article V, Section 13 of the Texas Constitution and Article 36.29(a) of the Texas

---

[45]  An appellant can raise a claim of error in the failure of the jury charge to require an unanimous verdict on appeal regardless of whether he made that objection in the trial court; the only limitation is that, if he made no trial objection, the record must demonstrate egregious harm before he may obtain appellate relief on that basis. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). "Thus, we review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Id*. at 744. At the jury-charge conference at the conclusion of the guilt phase of trial, counsel for the appellant first objected that there was no evidence to support submission of the conspiracy theory of criminal liability under Section 7.03(b). When this objection was overruled, he continued:

> [DEFENSE COUNSEL]: Your Honor, there is one thing that I just realized I didn't place on the record. * * * That if you decide to leave the conspiracy charge in, then we would want a special issue in addition to the parties language to avoid a general verdict, and so that it can be argued as a general verdict on analysis with the Court of Criminal Appeals.

> THE COURT: I don't know what you're talking about, so you've got to give it to me. Show it to me. What do you want?

> [DEFENSE COUNSEL]: That they decide whether they find him guilty as a law of parties or they find him guilty as a conspiracy that it'll be separated out.

> THE COURT: Okay, it's denied.

It is difficult to determine from this trial colloquy precisely the extent of jury unanimity the appellant was seeking. Did he want an instruction that would require the jury only to specify which theory of party responsibility, if any, it found the appellant liable under? Did he want an instruction that would require the jury to specify only whether it found the appellant guilty as a principal actor or a party, without necessarily specifying the theory of party responsibility? Or did he want an instruction that would require the jury to specify both whether the appellant was guilty as a principal actor or a party, and also, if as a party, to specify the particular theory of party liability? (The fact that his request was made contingent on the trial court submitting the conspiracy theory of criminal responsibility suggests that appellant was requesting only an instruction that would require the jury to specify which theory of parties responsibility, if any, it found—but we cannot be certain.) Because we do not believe the trial court would have erred in failing to give *any* of these alternative instructions, however, we need not assay harm, egregious or otherwise.

Code of Criminal Procedure require unanimous jury verdicts in all felony cases.[46] Whether

the jury must be unanimous with respect to a particular fact or issue is, we have held,

"primarily a question of legislative intent."[47] Moreover, we have said, "[i]n deciding what

elements and facts a jury must unanimously agree on, courts implement the legislative intent

*behind the penal provision.*"[48] In *Pizzo v. State*, we elaborated:

> To discern what a jury must be unanimous about, appellate courts examine *the statute defining the offense* to determine whether the Legislature created multiple, separate offenses, or a single offense with different methods or means of commission. Jury unanimity is required on the essential elements of the offense but is generally not required on the alternate modes or means of commission. Therefore, it is necessary to identify the essential elements or gravamen of an offense and the alternate modes of commission, if any. This is accomplished by diagraming the statutory text according to the rules of grammar. The essential elements of an offense are, at a minimum: (1) the subject (the defendant); (2) the main verb; (3) the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime); the specific occasion, and the requisite mental state. The means of commission or nonessential unanimity elements are generally set out in adverbial phrases that describe how the offense was committed. Such phrases are commonly preceded by the preposition "by."[49]

Although this "eighth-grade grammar" approach, first suggested by Judge Cochran in her

---

[46]

    TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. art. 36.29(a).

[47]

    *Stuhler v. State*, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007); *Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006).

[48]

    *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008) (emphasis added).

[49]

    *Pizzo v. State*, 235 S.W.3d 711, 714-15 (Tex. Crim. App. 2007) (emphasis added) (internal quotation marks and citations omitted).

concurring opinion in *Jefferson v. State*,[50] "will not necessarily work invariably, in every scenario, to accurately identify legislative intent[,]"[51] we have deemed it generally useful and have since adopted it as a "rule of thumb" for that purpose.[52]

In his brief, the appellant begins his argument from the premise that "[t]o unanimously convict under the law of parties, the jury must find all the elements of the felony offense [presumably capital murder] unanimously, and also find all the elements of the law of parties unanimously."[53] He proceeds from this uncritical premise to apply the eighth-grade-grammar rule of thumb to the statutory language of Sections 7.02(a) and 7.02(b) of the Penal Code in an attempt to discern the "elements" of parties liability. But these are not the penal provisions that define the offense of capital murder; they do not identify the elements or gravamen of that offense. At best they operate like adverbial phrases, defining *not* the prohibited conduct that comprises capital murder (or any other criminal offense, for that matter), but conditions by which an accused may be deemed criminally responsible for the conduct of another that satisfies the elements or gravamen of capital murder (or any other criminal offense). They describe alternative manners by which an accused may be held

---

[50]
189 S.W.3d at 315.

[51]
*Pizzo v. State*, *supra*, at 722 (Price, J., concurring).

[52]
*Stuhler v. State*, *supra*.

[53]
Appellant's Brief, at 74.

accountable for the conduct of another who has committed the constituent elements of a criminal offense, but they in no way define the offense itself. Where, as is the case here, the evidence is compelling that an accused is guilty of every constituent element of the alleged penal offense—*either* as a principal actor *or* under some theory of party liability—but there remains evidentiary play with respect to his precise role in that offense, we think it would be plainly absurd to require the jury to acquit the accused unless it can unanimously determine his status as a principal actor or a party and, if the latter, what his exact party accountability might be.[54] Reasoning similarly, several courts of appeals in Texas have concluded that the Legislature did not intend that a jury should have to achieve unanimity with respect to whether an accused was guilty of capital murder as a principal actor or as a party, or with respect to any particular statutory alternative by which he might be found liable as a party.[55] We agree, and hold that there was no error in the jury charge. The appellant's fifth point of error is overruled.

## JUDICIAL BIAS

In his sixth point of error, the appellant maintains that his trial was fatally unfair

---

[54]

*See Jefferson v. State*, *supra*, at 314 ("We believe that it would be . . . absurd to set appellant free because, for example, six jurors may have believed that he struck the fatal blow to the child while six other jurors may have believed he failed to pick up the phone and call 9-1-1 to seek medical help for a child who was obviously very seriously injured and in great distress." (quotation marks omitted.)).

[55]

*Hanson v. State*, 55 S.W.3d 681, 694-95 (Tex. App.—Austin 2001, pet. ref'd); *Holford v. State*, 177 S.W.3d 454, 462-63 (Tex. App.—Houston [1ˢᵗ Dist.] 2005, pet. ref'd); *Randall v. State*, 232 S.W.3d 285, 293-94 (Tex. App.—Beaumont 2007, pet. ref'd).

because the judge who presided over it was popularly elected. He argues that only a judge whose tenure depends exclusively upon continued good behavior while in office is capable of resisting the ineluctable public pressure to assure convictions in capital prosecutions. Any conviction obtained before such a judge, he contends, must of necessity violate due process under the Fifth and Fourteenth Amendments and deprive him of a reliable sentencing mechanism in violation of the Eighth Amendment.[56] The appellant directs us to nowhere in the record where any such complaints were registered in the trial court, nor have we found any. Nor does he now offer any justification for treating these arguments as immune from ordinary principles of procedural default,[57] in contemplation of the framework for error preservation elaborated in *Marin v. State*.[58] For this reason, we regard his arguments under this point of error as inadequately briefed and decline to reach their merits.[59]

## MOTION FOR MISTRIAL

In his tenth point of error, the appellant urges us to order a new punishment hearing because the trial court erred in failing to grant his request for a mistrial at that stage of the trial. Having found certain testimony of a prison guard to have been admitted erroneously,

---

[56] U.S. CONST. amends. V, VIII, & XIV, § 1.

[57] TEX. R. APP. P. 33.1(a).

[58] 851 S.W.2d 275 (Tex. Crim. App. 1993).

[59] TEX. R. APP. P. 38.1(i).

the trial court instructed the jury in no uncertain terms to disregard it. The appellant argues that the testimony was so inflammatory that no instruction to disregard it could possibly prove efficacious. For its part, the State responds that no instruction to disregard was called for because the testimony was properly admitted in the first place. We agree with the State.

The witness, Sergeant James Porter, was a guard at the Bexar County Jail. He testified at the punishment phase of trial that, on June 1, 2008, he had an encounter with the appellant while the appellant was incarcerated pending trial. On that day, against instructions, the appellant had left his cell door open, and Porter took the opportunity to "just look around" in his absence.

Q. Okay. And so, when you went into his cell, what happened?

A. While I was in his cell, he had come up the stairs behind me and came down to the cell, and when I noticed him there, I came out.

Q. Okay.

A. And he said, "What were you doing in my cell?" I said, "You should have shut the door like I told you." And he looked at me and said to me, just as plain as I'm talking to you, just as calm as he could be, "If you go in my cell again, I'll fucking kill you." And I said, "Excuse me, sir?" He said, "You heard me. I'll throw you off of this tier. I'll fucking kill you." I said, "Fair enough."

I turned around. I went down the steps, I went and wrote a disciplinary report, one-dash-one, threats, terroristic threats, and sent it up to the Sergeant's office[.]"

A short time after this testimony, the appellant objected on the basis that Porter's rendition of the appellant's threat did not comport with a description contained in the pretrial notice

provided by the State with respect to this incident. On this basis, the trial court categorically instructed the jury to disregard the testimony it had already heard from Porter:

> Ladies and gentlemen, the last witness, Sergeant James Porter, I'm ordering you to disregard anything he may have said during his testimony. You're not to take it into consideration for any purpose at this time. Okay?

The appellant immediately requested a mistrial, which the trial court denied.

Article 37.071, Section 2(a)(1) of the Code of Criminal Procedure provides that, in a capital punishment trial, "[t]he introduction of evidence of extraneous conduct is governed by the notice requirements of Section 3(g), Article 37.07."[60] Under Section 3(g) of Article 37.07, "[o]n timely request, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence."[61] Rule 404(b), in turn, requires "reasonable notice . . . in advance of trial of intent" to introduce extraneous conduct evidence,[62] but it does not directly speak to a level of specificity. For notice of unadjudicated extraneous misconduct to be "reasonable" for purposes of Section 3(g) of Article 37.07, and hence, Article 37.071, Section 2(a)(1), it must include "the date on which and the county in which [the extraneous misconduct] occurred and the name of the alleged

---

[60] TEX. CODE CRIM. PROC. art. 37.071, § 2(a)(1).

[61] TEX. CODE CRIM. PROC. art. 37.07, § 3(g).

[62] TEX. R. EVID. 404(b).

victim of the [extraneous misconduct]."[63] The notice that the State provided in this case easily satisfies this minimum statutory threshold for reasonableness.

The appellant's trial commenced on May 11, 2009. The first word that the appellant received of Porter's proposed testimony came in the State's first supplemental notice, which it served on the appellant on March 6, 2009, more than two months before trial. That notice read:

> On or about May 1, 2008, in Bexar County, Texas, while an inmate at the Bexar County Jail, Defendant threatened Officer J. Porter (badge #3135) by stating either exactly or something to the effect of: "I'm here on capital murder. I ain't got nothing to lose. If you go in my cell again or mess with me in any way I'm going to make you regret it. I'm going to do something bad to you. You can write me up. I don't give a fuck. But it isn't a threat, it is a promise."

In its fourth supplemental notice, served on the appellant on April 23, 2009, the State corrected the date to June 1, 2008. Otherwise, the notice was identical. And finally, on May 8, 2009, three days before trial commenced, the State served the appellant with its sixth and final supplemental notice, which was identical to the notice provided in its fourth supplemental notice except that for the first time it added a sentence: "A short time later, defendant also threatened to throw Officer Porter off the second tier of the Unit CD."

We fail to see how the State's notice could reasonably be deemed deficient. By April 19th—almost three weeks before trial began—the appellant had been formally informed of all of the information statutorily *essential* to "reasonable notice": where, when, and at whom

---

[63] TEX. CODE CRIM. PROC. art. 37.07, § 3(g).

the extraneous conduct was directed. *What* the conduct included was also substantially supplied, along with the caveat that the quoted threat may be an approximation—"something to the effect of" the language conveyed in the notice. By three days prior to the first day of trial, the only information missing from the State's notice was the express death threat. But by that time the appellant had long been informed that the State intended to prove that he had promised to "do something bad" to Porter. Under these circumstances, the record fails to support the trial court's conclusion that the State failed to provide "reasonable notice" of Porter's testimony in contemplation of Articles 37.071, Section 2(a)(1), Article 37.07, Section 3(g), and Rule 404(b). It was not inadmissible on that account.

When the trial court nevertheless instructed the jury in unmistakable terms to disregard Porter's testimony, the appellant enjoyed a windfall. If, as the appellant argues, the trial court's instruction to disregard it was inefficacious, this only means that the jury may have considered unobjectionable evidence that was manifestly relevant to the issue of his future dangerousness. Under these circumstances, we decline to hold that the trial court's denial of the motion for mistrial constituted reversible error. Accordingly, we overrule the appellant's tenth point of error.

## RIGHT TO PRESENT A COMPLETE PUNISHMENT DEFENSE

The appellant maintains in his eleventh point of error that his federal constitutional right to present a complete defense to the death penalty was compromised when the trial court refused to admit proffered punishment-phase testimony of an out-of-court statement

made by his girlfriend and accomplice, Dolores Trevino, to his sister, Amanda Leza. According to testimony from Amanda that was adduced outside the presence of the jury, Trevino admitted to Amanda shortly after the offense was committed that she had been the one who had cut Allen's throat, and that she had acted alone. The appellant contends that this out-of-court statement was admissible as a statement against penal interest under Rule 803(24) of the Texas Rules of Evidence.[64] In failing to admit this proffered out-of-court statement, the appellant argues, the trial court committed error of a federal constitutional dimension under the Supreme Court's recent holding in *Holmes v. South Carolina*.[65]

At trial, however, although the appellant argued that Trevino's out-of-court statement satisfied the criteria for admissibility under Rule 803(24), he never alerted the trial court in any way that exclusion of the statement would violate any federal constitutional right. Nor does he argue now, as he did at trial, that its exclusion violated state law. On appeal, he

---

[64]

*See* TEX. R. EVID. 803(24) ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * **Statement Against Interest.** A statement which . . . at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.").

[65]

547 U.S. 319, 324 (2006) ("State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. This latitude, however, has limits. Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process Clause of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." (citations and internal quotation marks omitted)).

argues only that constitutional error occurred—asserting, for example, that the error was harmful exclusively by the constitutional criteria for harmless error embodied in Rule 44.2(a) of the Rules of Appellate Procedure, rather than Rule 44.2(b),[66] the provision that governs harm analysis for non-constitutional errors. Because the only argument that the appellant now pursues on appeal with respect to the exclusion of Trevino's out-of-court statement was not preserved for appeal by a contemporaneous objection,[67] and he fails to argue that the constitutional right upon which he relies is, or that we should hold it to be, immune to ordinary principles of procedural default,[68] we overrule his eleventh point of error without reaching the merits.

## VICTIM IMPACT INSTRUCTIONS

By way of point of error twelve, the appellant asserts error in the trial court's failure to include certain instructions in the jury charge at the punishment phase, designed to limit the jury's consideration of victim-impact evidence.[69] The appellant directs us to no place in the

---

[66] TEX. R. APP. P. Rule 44.2.

[67] TEX. R. APP. P. 33.1(a). Under this rule, an objection must be both timely and specific, alerting the trial court to any and every legal basis upon which the appellant should desire to predicate a claim later on appeal.

[68] *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993). Even after the State asserted in its reply brief that the appellant had forfeited his federal constitutional claim, the appellant failed to argue, in his response to the State's reply brief, either that he had in fact preserved the error or that preservation was not required under the *Marin* framework.

[69] The instructions that the appellant argues should have been submitted were to the effect that:

record in which he may have requested such instructions or objected to their absence, and we have found none; nor does he argue, in the absence of such a request or objection, that the record demonstrates he was egregiously harmed, excusing him from the burden of preserving jury-charge error under *Almanza v. State*.[70]   In any event, as the State points out, we have lately held, on more than one occasion, that a trial court does not err in failing to submit the very instructions the appellant now contends should have been submitted on appeal.[71] Because the appellant offers no justification for reconsidering these recent holdings, we overrule his twelfth point of error.

## CONSTITUTIONAL CHALLENGES

In his seventh point of error, the appellant challenges the constitutionality of the so-

---

(1)   the jury's consideration of victim impact evidence should not be conducted in connection with the future dangerousness issue;

(2)   the jury's consideration of victim impact evidence does not relieve the state of its burden to prove the future dangerousness special issue beyond a reasonable doubt;

(3)   the jury should disregard victim impact evidence that was not shown to be within the knowledge or reasonable expectation of the defendant; and

(4)   the jury should not make a comparative worth analysis of the value of the victims to their families and community compared to the defendant or other members of society.

[70]   *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (opinion on State's motion for reh'g).

[71]   *Mays v. State*, 318 S.W.3d 368, 391 & n.85 (Tex. Crim. App. 2010); *Saldano v. State*, 232 S.W.3d 77, 105-107 (Tex. Crim. App. 2007).

called "10-12 rule"[72] and the provision that prohibits the defense from informing the jury that a failure to agree on a special issue would result in life rather than a death sentence.[73] The appellant argues that these aspects of Article 37.071 result in arbitrariness in the imposition of the death penalty. We have repeatedly rejected these claims,[74] and we likewise reject them today. We overrule the appellant's seventh point of error.

In his eighth, ninth, and thirteenth points of error, the appellant contends that the trial court committed constitutional error in failing to include in the jury charge at the punishment phase of trial definitions of the words "militates," "criminal acts of violence," and "probability."[75] The appellant recognizes that we have previously rejected these claims,[76] but requests that we reconsider them. He has not distinguished his case from those in which these same claims were denied. We decline to reconsider our previous holdings and overrule points of error eight, nine, and thirteen.

## SUPPRESSION OF EXCULPATORY EVIDENCE

With respect to his fourteenth and final point of error, the appellant has attached two

---

[72] TEX. CODE CRIM. PROC. art. 37.071 §§ 2(d) & (f)(2).

[73] TEX. CODE CRIM. PROC. art. 37.071 § 2(a)(1).

[74] *Russeau v. State*, 171 S.W.3d 871, 886 (Tex. Crim. App. 2005); *Druery v. State*, 225 S.W.3d 491, 509 (Tex. Crim. App. 2007).

[75] *See* TEX. CODE CRIM. PROC. art. 37.071 §§ 2(b)(1) & (d)(1).

[76] *Russeau v. State*, 291 S.W.3d 426, 434-35 (Tex. Crim. App. 2009).

letters that his appellate counsel received from an assistant district attorney, apparently in relation to another case altogether. These letters informed appellate counsel that, since the appellant's trial, a certain Bexar County deputy sheriff, not a witness at either phase of the appellant's own trial, had been charged with aggravated perjury and abuse of official capacity. When the relevance of these charges to appellant's circumstances was not immediately apparent to appellate counsel, she contacted the assistant district attorney for additional information, but none was provided. Appellate counsel now avers that she believes the letter was most likely sent to her by mistake, but in an abundance of caution she brings a claim that the State has violated the appellant's due-process rights under *Brady v. Maryland*,[77] by suppressing evidence favorable to him at the time of his trial. Obviously, the letters upon which the appellant now relies are not any part of the appellate record in this case, and we could not predicate any appellate relief upon them even if they did establish a *Brady* violation.[78] We therefore overrule the appellant's fourteenth point of error—without prejudice, of course, to pursue any *Brady* claim that further investigation might turn up

---

[77] 373 U.S. 83 (1963).

[78] *See, e.g.*, *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) ("An appellate court may not consider factual assertions that are outside the record, and a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal." (footnotes omitted)); *Thompson v. State*, 612 S.W.2d 925, 928 (Tex. Crim. App. 1981) ("Articles attached to briefs are not properly before this Court as evidence."); George E. Dix & John M. Schmolesky, 43B TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 55:48 (3rd ed. 2011), at 116 ("Perhaps the most basic characteristic of the appellate record is that it is limited to matters before the trial court. An appellate court may not consider such extra-record materials as affidavits attached to appellate briefs.").

pursuant to his initial application for post-conviction writ of habeas corpus brought under

Article 11.071 of the Code of Criminal Procedure.[79]

## CONCLUSION

Finding no error, we affirm the judgment of the trial court.


DELIVERED:     October 12, 2011
PUBLISH

---

[79]   TEX. CODE CRIM. PROC. art. 11.071.