# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-10-00773-CR

**Jose Bernabe, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. D-1-DC-09-302548, HONORABLE JON N. WISSER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Jose Bernabe of the second-degree felony offense of sexual assault of a child and assessed punishment at eight years in prison. *See* Tex. Penal Code Ann. § 22.011 (West 2011). Bernabe challenges his conviction, contending that the district court erred in denying Bernabe's motion to suppress his confession to police because there is no evidence that he made a "knowing and intelligent" waiver of his rights. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2(b) (West 2005). We will affirm the judgment of conviction.

## BACKGROUND

At a pretrial suppression hearing, Bernabe argued for the exclusion of his confession because he did not make a "knowing and intelligent" waiver of his rights. *See Jackson v. Denno*, 378 U.S. 368 (1964). Austin Police Department Detective Arturo Canizales was the sole witness at the suppression hearing. Canizales testified that Bernabe, a Spanish-speaker, seemed eager to discuss the case after his arrest and tried to do so while en route to the police station, but Canizales

asked him to wait. After arriving that the police station, Canizales conducted a custodial interview with Bernabe in Spanish during which he read Bernabe his *Miranda* warnings, *see Miranda v. Arizona*, 384 U.S. 436, 444 (1966), and gave him a card with a Spanish-translation of the *Miranda* warnings printed on the front and a waiver of those rights printed on the back.[1] Bernabe had an opportunity to read the card, initialed to the left of each warning, indicated verbally that he understood each of the warnings, and signed and dated the reverse side of the card with the waiver of his rights. Canizales testified that he did not read the reverse side of the card to Bernabe because that was not standard practice.[2] Shortly after initialing and signing the *Miranda* card, Bernabe agreed to speak with Canizales about the case and confessed in explicit detail to sexual acts with his stepdaughter N.M., whom he knew was a minor but he considered his "girlfriend."

---

[1] The front of the *Miranda* warning card, printed in English and Spanish, stated:

1. You have the right to remain silent and not make any statement at all and that any statement you make may be used against you and probably will be used against you at your trial;

2. Any statement you make may be used as evidence against you in court;

3. You have the right to have a lawyer present to advise you prior to and during any questioning;

4. If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning;

5. You have the right to terminate this interview at any time.

The reverse side of the card, also with sections in English and Spanish, stated:

I have received and understand the warning[s] on the other side of the card. I agree to waive these Rights and to make a Statement.

[2] Canizales testified that officers are now required to read the waiver to the accused.

2

The trial court denied Bernabe's motion to suppress, and subsequently made findings of fact and conclusions of law concerning Bernabe's confession. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 2005). The court's findings, fairly summarized, determined that Bernabe received all of the article 38.22 warnings printed in Spanish on the *Miranda* card, he initialed next to each of them, signed the back of the card, and told Canizales that he wanted to talk about the case. The court further determined that Bernabe's conduct in the patrol car and at the station showed his eagerness to explain his version of events, and nothing suggested that he was coerced, tricked, or pressured to discuss the case, nor was he promised or offered anything to get him to speak to Canizales about the case. Based on these findings, the trial court concluded that although Bernabe was not asked directly whether he waived his article 38.22 warnings, he nonetheless "implicitly, knowingly, and voluntarily" waived his article 38.22 rights and gave his statement. At the conclusion of a four-day trial, a jury convicted Bernabe of sexual assault of a child as alleged in Count 1 of the indictment, and assessed punishment. This appeal ensued.

**ANALYSIS**

Article 38.22 of the code of criminal procedure sets forth procedural safeguards for securing the accused's privilege against self-incrimination in criminal proceedings. *Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010) (citing Tex. Code Crim. Proc. Ann. art. 38.22). Included within those safeguards is the prohibition against admission of any oral statement that the accused made during custodial interrogation unless the statement was recorded and, before the statement but during the recording, the accused was warned of his rights and "knowingly, intelligently, and voluntarily" waived those rights. *Id*. at 23-24; *see* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(1)-(2). Article 38.22 warnings must advise the accused that

3

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time.

*Joseph*, 309 S.W.3d at 24 (citing Tex. Code Crim. Proc. Ann. art. 38.22, § 2); *see Miranda*, 384 U.S. at 444. Admissibility of an accused's custodial-interrogation statement requires both the article 38.22 warning and a waiver. *See Joseph*, 309 S.W.3d at 24.

In his sole issue, Bernabe contends that the district court erred in denying his motion to suppress his confession to police because there is no evidence that he made a "knowing and intelligent" waiver of his rights. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2(b). It is undisputed that Bernabe was not coerced or intimidated into giving his statement. Bernabe acknowledges that he received the article 38.22 warnings and that he waived his rights voluntarily. He argues only that his waiver of rights was not given "knowingly and intelligently" because there is no indication that he was aware of the nature of the rights being waived and the consequences of waiving those rights.

The State has the burden of establishing a valid waiver of *Miranda* rights by a preponderance of the evidence. *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). An accused's waiver of rights is considered "knowing and intelligent" when it is made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Joseph*, 309 S.W.3d at 25 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). We

4

consider the "totality of the circumstances surrounding the interrogation," including the accused's experience, background, and conduct, in deciding whether the accused had the requisite level of comprehension. *Id*. The Texas Court of Criminal Appeals has stated that a waiver is knowing and intelligent if "the accused has been made aware and fully comprehends that he has the right to remain silent in the face of police interrogation and to discontinue the dialogue at any time, and that the consequence of his waiver is that his words may be used against him in a court of law." *Leza*, 351 S.W.3d at 350 (citing *Ripkowski v. State*, 61 S.W.3d 378, 384 n. 10 (Tex. Crim. App. 2001)). The waiver need not assume any particular form, *Joseph*, 309 S.W.3d at 24, and "may be inferred from actions and words of the person interrogated." *Leza*, 351 S.W.3d at 353 (quoting *Barefield v. State*, 784 S.W.2d 38, 41 (Tex. Crim. App. 1989)). It is within a trial court's discretion to rely on an implied waiver whenever the totality of the circumstances of the defendant's recorded statement supports it. *Leza*, 351 S.W.3d at 353.

Bernabe contends that any awareness he had of the nature of the rights being waived and the consequences of the decision to waive those rights "must be inferred solely from the fact that he had an opportunity to read the Spanish text on the back of the *Miranda* card where he placed his signature." However, in determining whether the record establishes a "knowing and intelligent" waiver of rights, we consider the totality of the circumstances surrounding the interrogation, including the interrogated person's actions and words. *Id.* at 353. Here, the totality of the circumstances surrounding Bernabe's recorded, translated, and transcribed interrogation shows that Bernabe understood the nature of the rights he abandoned and the consequences of making his statement to police. Bernabe had an opportunity to read both sides of the *Miranda* card. He placed his initials beside each individual warning, indicated verbally that he understood each warning as

it was read to him, and at the conclusion of the warnings stated, "I do understand." Bernabe also signed and dated the spaces immediately below the only two sentences on the reverse side of the card, acknowledging his receipt and understanding of the warnings and declaring his intent to waive those rights and make a statement.

After Bernabe completed both sides of the *Miranda* card, he verbally confirmed that he wanted to talk to Canizales about the case. During that discussion, Canizales stated that he knew about Bernabe's feelings for his stepdaughter because Canizales read text messages sent from Bernabe's phone to his stepdaughter's phone, including one that stated, "I never abused you [N.M.]. It happened for love." Confronted with that evidence, Bernabe acknowledged:

> Yes. You are right. You are completely right. Well, sometimes the situation is very difficult for one as an adult. . . . But for loving one person, you cannot be deprived of your freedom.

Then, indicating awareness of his right not to make the statements that were to follow and his understanding of the possible criminal consequences of what he was about to say, Bernabe continued:

> *What I'm going to say might condemn me.* But I do it with the sole purpose of being honest. . . . I don't take back what I say because I have always spoken the truth. I will tell you the story of what happened. You are the second person who knows it. It all depends on your conscience or the conscience of whoever wants to accuse me. I am willing to carry this to its logical conclusion. . . . If one day *they lock me up* over there for loving one person, it will remain on everybody's conscience.

[Emphases added.] Bernabe proceeded to provide an explicit confession of the sexual acts he had engaged in regularly with his minor stepdaughter, whom he considered his "girlfriend."

6

The preface to Bernabe's confession clarifies that he knew he did not have to make the statements he was about to make, but he wanted to "be[] honest" and "tell [Canizales] what happened." Bernabe further knew what he was about to say might "condemn him" and one day he might be "locked up," but he chose to speak anyway. Under totality of the circumstances in this record, we conclude that Bernabe provided his statement "knowingly and intelligently," with full awareness of the rights being abandoned and the consequences of his decision to abandon them. *See Joseph*, 309 S.W.3d at 25. Because the record supports the trial court's findings that Bernabe "implicitly and knowingly" waived his article 38.22 rights, the trial court did not err in denying Bernabe's motion to suppress. *See Leza*, 351 S.W.3d at 353. Accordingly, we overrule Bernabe's sole issue.

## CONCLUSION

Having overruled Bernabe's sole issue, we affirm the district court's judgment of conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed: August 10, 2012

Do Not Publish

7