COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| ALISA SANCHEZ, | | No. 08-10-00196-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 399th Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | | of Bexar County, Texas |
| | § | |
| Appellee. | | (TC# 2010CR4438) |
| | § | |
| | § | |

**O P I N I O N**

Alisa Sanchez was convicted of eight counts of aggravated sexual assault of a child and

four counts of indecency with a child. She was sentenced to 30 years' in prison for each of the

aggravated sexual assault convictions and 20 years' for each count of indecency with a child,

with the sentences to run concurrently. On appeal, she asserts that she was deprived of her right

to present a complete defense because the trial court excluded from evidence a videotaped

interview with the victim. We conclude that Sanchez failed to preserve this issue and, even if it

had been preserved, it fails on the merits. Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The victim was Sanchez's daughter. In 2003, when she was six years' old, the victim told

her aunt that Sanchez's boyfriend, Floyd Hinjosa, was sexually abusing her. An investigation by

Child Protective Services (CPS) ensued. In a videotaped interview with a CPS caseworker, the

victim again identified Hinojosa as the person who had sexually abused her. Hinojosa, who was

already a registered sex offender, subsequently pled guilty to aggravated sexual assault of a child and was sentenced to thirty-five years' in prison.

The victim's biological father obtained custody of her, and she went to live with him, his wife, and their other children. Sanchez relinquished her parental rights subject to an open adoption arrangement, which allowed the victim to contact Sanchez if she wished to do so.

In 2006, the victim told her stepmother in graphic terms that Sanchez had actively participated with Hinojosa in sexually abusing her. Following another investigation, charges were filed against Sanchez. The State presented its case through the testimony of the victim, her stepmother, CPS caseworkers, and a child abuse expert. The State also presented the testimony of Hinojosa, who verified that Sanchez actively participated in the sexual abuse.

Sanchez relied on her own testimony, in which she denied her daughter's allegations, as well as the testimony of family members and CPS workers, who stated that the victim did not implicate Sanchez at the time she made her initial outcry in 2003 or for years afterward.

## VIDEOTAPE EVIDENCE

Sanchez's attorney sought to have the videotape of the 2003 CPS interview admitted into evidence. The prosecution argued that the videotape was hearsay and would amount to improper impeachment because the victim testified that what she said during the interview was accurate. Defense counsel replied that he was not trying to impeach the victim with a prior inconsistent statement, but was offering the videotape on the issues of opportunity, demeanor, and credibility. He relied on four cases "for the proposition . . . that it is not an abuse of discretion for the Court to allow a videotape to determine the demeanor and credibility of the witness, especially when it's a . . . he said/she said situation." Counsel stated that the defense was entitled to show that the

victim "was not in fear of disclosing [and] that she was in an environment that was safe and those are the kinds of . . . issues and demeanor that would be reflected on the video." Citing Rule 404(b) of the Texas Rules of Evidence, counsel further argued that the videotape "would show that this child had ample opportunity to outcry to several people about whether or not her mother ever did this . . . ." Finally, counsel argued that the videotape would show the victim's state of mind. He suggested that if the victim had been sexually assaulted by her mother, "she would have certainly disclosed that to somebody who's there to give an interview for that purpose. She goes into great detail about what Floyd did but never says anything about what her mother did. And I believe that the jury's entitled to judge her demeanor and her credibility in determining the truthfulness" of her testimony. The judge sustained the prosecution's objection and stated for the record that she had "conducted the appropriate balancing test under Rule 403."

After the judge released the jury for lunch, defense counsel made a bill of exception for purposes of the appellate record.[1] He clarified his argument for admissibility as follows:

> [T]his videotape would . . . allow the jury to . . . better judge the credibility and demeanor of the complainant in this case. That the video would show the opportunity of this child to have out cried about her mother . . . that because the Defendant was . . . denied the ability to publish the videotape in front of the jury the Defendant was denied her constitutional rights, denied her right to a fair trial, denied her right to due process.

Defense counsel also read into the record the citations for the four cases he had mentioned earlier.

In her sole issue on appeal, Sanchez asserts that exclusion of the videotape violated her "Due Process right under the Sixth Amendment to present evidence in defense." The only case

---

[1] It appears that the previous arguments by counsel and the ruling by the judge were conducted within the jury's presence and hearing.

Sanchez cites in support of her appellate issue is *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).

*Holmes* involved a South Carolina evidentiary rule "under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict." 547 U.S. at 321, 126 S.Ct. at 1729. The rule required the exclusion of third-party guilt evidence unless it raised a reasonable inference as to the defendant's innocence. *Id.* at 323, 126 S.Ct. at 1731. The trial court in *Holmes* excluded testimony that another person was near the scene of the crime and that he even admitted to committing the crime. *Id.*, 126 S.Ct. at 1730-31. In affirming, the South Carolina Supreme Court held that "where there is strong evidence of an appellant's guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt does not raise a reasonable inference as to the appellant's own innocence." *Id.* at 324, 126 S.Ct. at 1731.

The United States Supreme Court noted that well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by other factors, such as when the evidence is repetitive, of only marginal relevance, or unfairly prejudicial or harassing, or when it may confuse the issues or mislead the jury. *Id*. at 326, 126 S.Ct. at 1732. As an example of such a rule, the Court cited Rule 403 of the Federal Rules of Evidence. *Id.*, 126 S.Ct. at 1732. But although states have wide latitude to establish rules excluding evidence from criminal trials, that latitude does have limits, because "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes*, 547 U.S. at 324, 126 S.Ct. at 1731 [Internal quotation marks omitted]. The Constitution precludes evidentiary rules that "infringe upon a weighty interest of the accused and are arbitrary or disproportionate to

the purposes they are designed to serve." *Id*., 126 S.Ct. at 1731 [Internal quotation marks and brackets omitted].

The purpose of South Carolina's rule was to focus the trial on the central issues by excluding evidence that has only a very weak logical connection to those issues. *Holmes*, 547 U.S. at 330, 126 S.Ct. at 1734. In practice, however, the rule did not rationally serve this purpose because it did not focus on the probative value or the potential adverse effects of admitting the third-party guilt evidence. *Id*. at 329-31, 126 S.Ct. at 1734-35. The rule focused only on the strength of the prosecution's case, and if the prosecution's case was strong, the evidence of third-party guilt would be excluded even if that evidence, viewed independently, would have great probative value and would not pose an undue risk of harassment, prejudice, or confusion of the issues. *Id*. at 329, 126 S.Ct. at 1734. Consequently, the Court held that the rule violated the defendant's right to have "a meaningful opportunity to present a complete defense." *Id*. at 331, 126 S.Ct. at 1735 [Internal quotation marks omitted].

Sanchez argues that although the situation presented here is different from *Holmes*, the reasoning of *Holmes* should apply. She argues that there were serious questions regarding the victim's credibility because the victim waited years between initially implicating Hinojosa and then implicating her mother. She asserts that the jury should have been able to consider the victim's testimony in light of what she said during the initial interview and her demeanor and attitude during that interview.

Sanchez further argues that the exclusion of the videotape was harmful error under Texas Rule of Appellate Procedure 44.2(a), which governs errors of a constitutional dimension. She contends that the victim's credibility was crucial to the State's case. No biological or forensic

evidence was presented. The prosecution relied principally on the victim's allegations, presented both through her own and her stepmother's testimony, and the corroborating testimony of Hinojosa, an unrepentant pedophile and convict. The prosecution also presented testimony indicating that the victim delayed in making an outcry against her mother because she was afraid. Sanchez suggests that if the jurors had watched the videotape, they would have seen that she was not agitated or fearful.

The Texas Court of Criminal Appeals discussed *Holmes* in a recent case. *See Leza v. State*, ___ S.W.3d ___, ___, 2011 WL 4809816, at *9 (Tex.Crim.App. Oct. 12, 2011). In that case, the appellant asserted that his right under *Holmes* to present a complete defense to the death penalty was compromised when the trial court excluded punishment phase evidence of an out-of-court statement by his accomplice. *Id*. A witness would have testified that the accomplice admitted that she acted alone. *Id*. The appellant argued to the Court of Criminal Appeals that the out-of-court statement was admissible as a statement against penal interest under Rule 803(24) of the Texas Rules of Evidence and that the trial court committed error under *Holmes* in excluding it. *Id*. The Court of Criminal Appeals held that the appellant failed to preserve his *Holmes* issue for review because he relied solely on Rule 803(24) at trial. He also failed to preserve a Rule 803(24) issue because he only cited the constitutional harmless error rule on appeal. *Id*.

At trial, Sanchez relied on Rule 404(b) and argued that the videotape would show the victim's state of mind and demeanor. As in *Leza*, she never asserted her right to present a complete defense at trial. She did not cite *Holmes*, and the four cases that she did cite do not refer to *Holmes* or discuss the right to present a complete defense. *See Hall v. State*, 67 S.W.3d 870 (Tex.Crim.App.), *vacated*, 537 U.S. 802, 123 S.Ct. 70, 154 L.Ed.2d 4 (2002); *Dorsey v.*

*State*, 117 S.W.3d 332 (Tex.App.--Beaumont 2003, pet. ref'd); *Briones v. State*, 12 S.W.3d 126 (Tex.App.--Fort Worth 1999, no pet.); *Staley v. State*, 888 S.W.2d 45 (Tex.App.--Tyler 1994, no pet.). Also as in *Leza*, Sanchez cites only the constitutional harmless error rule on appeal.

There is one distinction between *Leza* and this case. At the end of his bill of exception, Sanchez's attorney stated that Sanchez "was denied her constitutional rights, denied her right to a fair trial, [and] denied her right to due process." We do not believe that this statement was sufficient to preserve the *Holmes* issue for appeal.

To preserve a complaint for appellate review, the record must show that the complaint was presented to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX.R.APP.P. 33.1(a)(1)(A). "Under this rule, an objection must be both timely and specific, alerting the trial court to any and every legal basis upon which the appellant should desire to predicate a claim later on appeal." *Leza*, 2011 WL 4809816, at \*9 n.67. "Additionally, 'shotgun' objections, citing many grounds for the objection without argument, will not preserve points based on authority which is merely mentioned in the trial court." *Webb v. State*, 899 S.W.2d 814, 818 (Tex.App.--Waco 1995, pet. ref'd). Counsel's general references to constitutional rights and to due process were not sufficiently specific to alert the trial judge that the exclusion of the videotape would prevent Sanchez from presenting a complete defense. *Cf. Gillenwaters v. State*, 205 S.W.3d 534, 536, 538 (Tex.Crim.App. 2006)(motion for new trial that cited the due process and due course of law clauses of the United States and Texas constitutions and argued that a statute was "unconstitutional as applied" failed to preserve overbreadth challenge because no reasonable trial judge would have understood the motion to be asserting an "unconstitutionally

overbroad as applied" challenge when the words "overbroad" and "overbreadth" did not appear in the motion and at no point during the trial did appellant make an overbreadth argument); *Shedden v. State*, 268 S.W.3d 717, 734-35 (Tex.App.--Corpus Christi 2008, pet. ref'd)(objection that ruling violated the defendants' "due process rights" was not sufficiently specific to preserve argument that the ruling violated their rights to a "fair trial" or to compulsory process).

Even if the issue were preserved, Sanchez has failed to demonstrate that any constitutional error occurred. The record indicates that the trial court excluded the videotape based on Rule 403 of the Texas Rules of Evidence, which permits the exclusion of relevant evidence if its probative value is outweighed by other interests--such as unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence. Sanchez does not argue on appeal that this rule, like the South Carolina rule at issue in *Holmes*, is arbitrary or disproportionate to the purpose it was designed to serve. *Holmes* specifically cited the comparable federal rule as an example of a valid rule. *See* 547 U.S. at 326, 126 S.Ct. at 1732.

Moreover, the Constitution does not guarantee criminal defendants the right to present all favorable evidence. *Potier v. State*, 68 S.W.3d 657, 659 (Tex.Crim.App. 2002), *citing United States v. Scheffer*, 523 U.S. 303, 316, 118 S.Ct. 1261, 1268, 140 L.Ed.2d 413 (1998). The Court of Criminal Appeals has held that "evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." *Id*. at 663. "[T]he exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier*, 68 S.W.3d at 665. Stated another way, "[e]xclusions of evidence are unconstitutional

only if they 'significantly undermine fundamental elements of the accused's defense.'" *Id*. at 666, *quoting Scheffer*, 523 U.S. at 315, 118 S.Ct. at 1267-68. The fact that a defendant was unable to present her case to the extent and in the form she desired is not prejudicial if she was not prevented from presenting the substance of the defense to the jury. *Id.*[2]

Sanchez argues that the victim's credibility was crucial to the State's case and that the videotape would have enabled the jury to judge whether she initially failed to implicate her mother because she was truly afraid. The substance of this defense was presented to the jury.

Sanchez's attorney cross-examined the victim. She testified that Sanchez impressed upon her the importance of telling the truth and would spank her if she did not tell the truth. She recalled having a conversation with her Aunt Liz and Sanchez, in which she initially denied that Hinojosa was abusing her. After Sanchez admonished her to tell the truth, she told Sanchez that Hinojosa had abused her. She also admitted that she told the CPS caseworker some of the specific sexual acts that Hinojosa would make her perform and that she told the caseworker that he would make her take showers. In addition, she told the CPS caseworker that the abuse occurred while her mother was at work and that her mother did not know about it. The victim admitted to the jury that Hinojosa did, in fact, sexually abuse her while Sanchez was at work. She admitted that she told the caseworker what Hinojosa was doing to her even though she was afraid of him, yet she never mentioned anything about her mother participating in the abuse, even though she was not afraid of her mother.

---

[2] Although *Potier* was decided before *Holmes*, it discusses the same principles and relies on many of the same Supreme Court cases as *Holmes*. *Compare Potier*, 68 S.W.3d at 660-62, *with Holmes*, 547 U.S. at 324-26, 126 S.Ct. at 1731-32. We consider *Potier* to be binding authority regarding the resolution of Sanchez's claim that she was precluded from presenting a complete defense.

The victim testified that she felt safe with her Aunt Liz, the person to whom she made her initial outcry. She told Aunt Liz essentially the same things that she told the CPS caseworker-- details of the sexual acts, the showers, the abuse occurring while her mother was at work. But she never told Aunt Liz that Sanchez participated in the abuse.

The victim acknowledged that she was very angry with Sanchez because of what Hinojosa did to her. Before she made her second outcry to her stepmother, Sanchez was trying to contact her and was sending her pictures, but the victim did not want to have anything to do with her.

The CPS caseworker who conducted the 2003 interview testified that only she and the victim were present during the interview. Defense counsel asked whether the victim appeared happy or sad when stating that she lived with her mother. The caseworker testified that the victim appeared neither happy nor sad. When stating that she lived with Hinojosa, the victim put her head down. The caseworker gave her an opportunity to identify additional people as perpetrators, but she only identified Hinojosa. The caseworker testified that the victim appeared fearful in general, and she told the caseworker that she was afraid of Hinojosa. She was only afraid of her mother "[w]hen she gets a spanking." The victim told the caseworker that she was not afraid of her Aunt Liz and that she "felt safe" with her. Additionally, she discussed having to take showers and told the caseworker that she was required to keep a secret from her mother.

From this testimony, the jury could have inferred that the victim was not truly afraid of Sanchez and that her allegations were not credible. Because the substance of the evidence that Sanchez wanted to elicit from the videotape was presented to the jury, we cannot say that the videotape was such a vital portion of the case that its exclusion effectively precluded Sanchez

from presenting a defense or significantly undermined her defense.[3] *See Ray v. State*, 178 S.W.3d 833, 836 (Tex.Crim.App. 2005)(holding that because the defendant testified about her defensive theory, the exclusion of another witness's testimony did not prevent her from presenting her defense, even though the jury was likely to give less weight to the defendant's testimony than to the other witness).

## CONCLUSION

Sanchez's sole issue is overruled, and the judgment of the trial court is affirmed.

December 28, 2011

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)

---

[3] In reaching this conclusion, the Court has watched the videotaped interview.