

**IN THE**
**TENTH COURT OF APPEALS**

─────────────

**No. 10-13-00406-CR**

**ROSALYN BURDETT,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

─────────────

**From the 18th District Court**
**Johnson County, Texas**
**Trial Court No. F46691**

─────────────

**MEMORANDUM OPINION**

─────────────

Rosalyn Burdett appeals from a conviction for continuous sexual abuse of a child

for which she was sentenced to life in prison. TEX. PEN. CODE ANN. § 21.02 (West 2011).

Burdett complains that the trial court abused its discretion by denying her motion to

suppress evidence that was obtained illegally, that she received ineffective assistance of

counsel, and that the trial court abused its discretion by denying her motion to suppress

two interviews with law enforcement that she contends were involuntary. Because we find no reversible error, we affirm the judgment of the trial court.

## *Motion to Suppress Evidence*

In her first issue, Burdett complains that the trial court abused its discretion by denying her motion to suppress evidence found on an external hard drive which she argues was obtained illegally. Burdett argues that her ex-husband, Travis, stole the hard drive and therefore, the images found on the hard drive were illegally obtained, leading to their discovery and then given to law enforcement.

In her third issue, Burdett complains of the trial court's denial of her motion to suppress the statements she gave in two interviews to law enforcement after her arrest because there was not an affirmative waiver of her rights pursuant to section 38.22 of the Code of Criminal Procedure and *Miranda* and because her statements were not voluntarily made. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005); *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

### *Standard of Review*

We employ a bifurcated standard of review when reviewing motions to suppress. *Baird v. State*, 398 S.W.3d 220, 226 (Tex. Crim. App. 2013). We measure the propriety of the trial court's ruling under the totality of the circumstances, extending almost total deference to the trial court's rulings on questions of historical fact, as well as on its application of law to fact questions that turn upon credibility and demeanor.

*Pecina v. State*, 361 S.W.3d 68, 79 (Tex. Crim. App. 2012); *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). We review de novo the trial court's rulings on questions of law and its rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Pecina*, 361 S.W.3d at 79; *Leza*, 351 S.W.3d at 349. We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

On appeal, this Court "does not engage in its own factual review but decides whether the trial judge's fact findings are supported by the record. If the trial court's findings are supported by the record," we are "not at liberty to disturb them, and on appellate review, we address only the question of whether the trial court improperly applied the law to the facts." *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *see Dixon*, 206 S.W.3d at 590 ("We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case.").

*Illegally Obtained Evidence*

Burdett's first motion sought suppression of evidence that was found on a hard drive that she contends that Travis had stolen from her residence when he left. Burdett had called Travis and asked him to come and stay at her house and keep their two children for about four months while she was out of town for job training. Travis and

his girlfriend came and moved into Burdett's home. They were allowed to sleep in the master bedroom and set up their two computer systems in the living room in Burdett's house. Burdett would come and spend the weekend with them approximately every two weeks.

Toward the end of the four month period, Travis testified that Burdett informed Travis that he and his girlfriend would have to leave immediately because Burdett's boyfriend, Jay Morgan, would be upset if they stayed longer. According to Travis, they immediately packed their belongings and left within the two hour window they were given. This included hastily packing all of their computer equipment.

Travis and his girlfriend moved to Kansas where they placed the computer equipment in a garage. Some months later, Travis went to the garage to retrieve an external hard drive that he was going to use to teach his girlfriend how to use Linux. Travis saw an external hard drive that he recognized was not his. Travis testified that he intended to return the hard drive to Burdett in the future. He decided, however, to "triage" the hard drive, which involved backing up important documents or pictures on the hard drive. In doing so, Travis located a number of inappropriate pictures of a sexual nature depicting his children and Burdett. Travis and his girlfriend contacted law enforcement and Burdett was arrested a short time later.

Burdett claimed that she had stored the external hard drive with her jewelry, the children's games, and other personal items in the back of her closet in her bedroom.

Burdett testified that she had informed Travis to keep out of her closet and did not give Travis permission to use her computer equipment, including the hard drive. Burdett also testified that she did not force Travis and his girlfriend to leave immediately but told them they needed to leave the next day. According to Burdett, Travis and his girlfriend got upset and left right then, even before telling the children goodbye after school.

Burdett filed a motion to suppress the evidence found on the external hard drive as well as all evidence gained after that time as fruit of the poisonous tree because the taking of the hard drive by Travis was theft. After a hearing, the trial court denied the motion.

Our review of the record shows that the trial court, as factfinder, made the finding that Travis did not commit theft by taking the external hard drive from Burdett's residence. The trial court was called upon to decide which of two very different stories to believe and, based on the trial court's ruling, the trial court necessarily determined that Travis's account was credible and Burdett's was not. The record supports those factfindings. Using the appropriate standards and giving proper deference to the factfinder, the trial court did not abuse its discretion by denying Burdett's motion to suppress evidence. We overrule issue one.

*Oral Statements*

Burdett also filed a motion to suppress the statements she gave in two interviews to law enforcement after her arrest because there was not an affirmative waiver of her rights pursuant to section 38.22 of the Code of Criminal Procedure and *Miranda* and because her statements were not voluntarily made. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005); *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Burdett claims that in addition to the warnings required by article 38.22 and *Miranda*, two questions on the back of the waiver card she signed should have been read to her, which asked if she understood her rights and if she wished to talk to the officers at that time. Burdett also argues that there was no express waiver of her rights and that any waiver was not voluntary because of the conditions surrounding the interrogation.

*Waiver of Rights*

Under article 38.22, no oral statement of an accused made as a result of custodial interrogation shall be admissible against an accused in a criminal proceeding unless (1) the statement was recorded and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a); *Joseph v. State*, 309 S.W.3d 20, 23-24 (Tex. Crim. App. 2010). The warnings required by article 38.22 include those stated in *Miranda* and, in addition, a warning that the accused "has the right to

terminate the interview at any time." TEX. CODE CRIM. PROC. ANN. art. 38.22 §§ 2(a), 3(a)(2); *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

The State bears the burden of establishing a knowing, intelligent, and voluntary waiver of one's rights under *Miranda* and Article 38.22. *Miranda*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694; *Leza v. State*, 351 S.W.3d 344, 349, 351 (Tex. Crim. App. 2011); *Joseph v. State*, 309 S.W.3d at 24. Waiver must be proven by a preponderance of the evidence. *Miranda*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694; *Leza*, 351 S.W.3d at 349, 351; *Joseph*, 309 S.W.3d at 24. Without a valid waiver, a defendant's statement is generally inadmissible. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a); *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260, 176 L. Ed. 2d 1098 (2010); *Joseph*, 309 S.W.3d at 24. In determining whether there was a valid waiver of Burdett's rights we must look to the totality of the circumstances, "including the background, experience, and conduct of the accused." *North Carolina v. Butler*, 441 U.S. 369, 374-75, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *see Leza*, 351 S.W.3d at 349, 352-53; *Joseph*, 309 S.W.3d at 25.

A waiver can be expressly made or implied by the accused's conduct. *Berghuis*, 130 S. Ct. at 2261; *Joseph*, 309 S.W.3d at 24. An implied waiver of one's rights is established upon a showing that the accused: (1) was given the proper warnings; (2) understood the warnings and their consequences; and (3) made an uncoerced statement. *Berghuis*, 130 S. Ct. at 2260-62; *see Moran v. Burbine*, 475 U.S. 412, 422-23, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986); *Leza*, 351 S.W.3d at 349. "As a general proposition,

the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis*, 130 S. Ct. at 2262.

While it is true that a waiver cannot be presumed from an accused's silence or the fact that a confession was made after warnings were provided, "the general rule is that neither a written nor an oral express waiver is required." *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988) (en banc). Simply making a statement is often the kind of conduct viewed as indicative of one's intention to waive her rights. *See Berghuis*, 130 S. Ct. at 2262; *Leza*, 351 S.W.3d at 348; *Joseph*, 309 S.W.3d at 25 n.7. This relatively low threshold for establishing waiver is because "[t]he main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel." *Berghuis*, 130 S. Ct. at 2261 (emphasis added).

Shortly after her arrest, Burdett was brought to an interrogation room for questioning. Prior to any questioning of Burdett an officer read the rights in article 38.22 to Burdett and asked her if she understood those rights. Burdett nodded yes. The officer handed Burdett a card which listed the rights set forth in article 38.22 and told her to read them if she was still unsure of her rights. The officer then asked Burdett to sign her name on the back to verify her understanding of her rights, which she did.

The first interview with Burdett lasted approximately two and a half hours. During that time, Burdett did not ask for the interview to stop or to take a break. The

officer who conducted the interview testified that had Burdett asked to take a break or to go to the restroom or for food or drink, those requests would have been honored. Burdett actively engaged in answering questions and did not appear to be overly tired even though the interview started at around 4 a.m. The two officers who were in the room were armed and came and went during the interview.

Burdett was 40 years old at the time of her arrest and was a supervisor for the Department of Health and Human Services. Burdett had a high school diploma and had taken some college courses. Burdett was also very familiar with computer technology.

The second interview with Burdett took place at approximately 4 p.m. the following day and lasted for less than one hour. The officer read Burdett the warnings as required by article 38.22, and asked Burdett if she understood her rights, to which Burdett replied "yes." The officer then asked Burdett to sign the card to demonstrate that she understood her rights, which Burdett did.

There were two questions on the back of the cards that were read to Burdett under the heading "WAIVER" which asked, "Do you understand each of these rights I have explained to you?" and "Having these rights in mind, do you still wish to talk to us now?" Below those questions were the lines for Burdett's signature, the time, date, and officer's signature. Burdett argues that not reading those questions aloud meant that the officer "arguably failed to comply with both *Miranda* and Art. 38.22 and he did not

give Appellant an opportunity to fully understand her rights, and what waiving those rights entailed." This argument seems to follow with Burdett's contention that she did not expressly waive her rights. However, as stated above, an express waiver is not necessary, although it is preferable. Burdett has not provided any authority for this proposition and we do not believe that article 38.22 or *Miranda* require that the questions on the card be read verbatim to a defendant.

Viewing the totality of the circumstances and in the light most favorable to the trial court's findings, we find that the trial court's determination that Burdett waived her rights pursuant to *Miranda* and article 38.22 was not erroneous.

*Voluntariness*

Burdett then argues that in the event that this Court determines that she knowingly and intelligently waived her rights, that her waiver was not voluntary because she was kept in a room that was approximately ten to twelve feet by eight or nine feet and was questioned by officers that were armed, which was intimidating to her. Burdett also argues that because the first interview was conducted in the early hours of the morning that her statements were subjectively involuntary because she was tired.

The determination of whether a confession is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition. *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App.), *cert. denied*, 516 U.S. 977, 116 S. Ct. 480, 133

L. Ed. 2d 408 (1995); *Smith v. State*, 779 S.W.2d 417, 427 (Tex. Crim. App. 1989). A statement is involuntary for purposes of federal due process if the record reflects "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *see Oursbourn v. State*, 259 S.W.3d 159, 169-70 (Tex. Crim. App. 2008). "Absent [coercive] police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Alvarado*, 912 S.W.2d at 211 (*citing Colorado v. Connelly*, 479 U.S. 157, 164, 107 S. Ct. 515, 520, 93 L. Ed. 2d 473 (1986)).

Although a claim of involuntariness under code of criminal procedure article 38.22 can be predicated on police overreaching, section 6 of the article additionally encompasses subjective involuntariness claims that do not turn solely on police overreaching. *Oursbourn*, 259 S.W.3d at 172. For example, "[a] confession given under the duress of hallucinations, illness, medications, or even a private threat . . . could be involuntary under Article 38.21 and the Texas confession statute." *Id*.

We have found nothing in the record to show that Burdett's statements made during her interviews with law enforcement were the product of improper conduct. Burdett has not provided any authority to support her position that being tired standing alone is sufficient to render a statement subjectively involuntary. Further,

Burdett's claim that she did not understand the warnings given to her because of the time of the first interview in the early morning is not supported by the record. Burdett appears subdued on the video of the interview but not overly tired. She was able to understand the questions posed to her and was able to respond appropriately.

We find that the trial court's findings that Burdett's statements were voluntary were not erroneous and the trial court did not err to deny Burdett's motion to suppress her statements given to law enforcement. We overrule issue three.

### *Ineffective Assistance of Counsel*

In her second issue, Burdett complains that she received ineffective assistance of counsel because her trial counsel did not call any witnesses during the punishment phase of her trial. In order to prevail on a claim of ineffective assistance of counsel, Burdett must meet the two-pronged test established by the U.S. Supreme Court in *Strickland* that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Unless she can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142. In order to satisfy the first prong, Burdett must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* To prove prejudice,

Burdett must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

An appellate court must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Id.* (*quoting Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). Claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus. *Id.* at 143 (*citing Bone v. State*, 77 S.W.3d 828, 833 n. 13 (Tex. Crim. App. 2002)). On direct appeal, the record is usually inadequately developed and "cannot adequately reflect the failings of trial counsel" for an appellate court "to fairly evaluate the merits of such a serious allegation." *Id.* (*quoting Bone*, 77 S.W.3d at 833).

Burdett did not file a motion for new trial on the basis of ineffective assistance of counsel and the record is silent as to any potential strategy by her trial counsel as to why he did not call any witnesses during the punishment phase of the trial. We note that Burdett's trial strategy during the guilt-innocence phase of the trial was largely based on an attempt to establish strong manipulation and coercion of the children by her boyfriend, Jay Morgan, which would explain why the offense occurred. This strategy included expert testimony. It is possible that Burdett's trial counsel considered that evidence, which was relevant for purposes of punishment as well, was unnecessary

to repeat in the punishment phase of the trial. Nevertheless, the record is silent as to any specific strategy and we will not speculate as to trial counsel's strategy. Because Burdett has not met her burden to establish the first prong in *Strickland*, we overrule her second issue.

## Conclusion

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed November 6, 2014
Do not publish
[CRPM]

