**Opinion filed September 29, 2023**



## In The

# Eleventh Court of Appeals

_____

### No. 11-22-00213-CR

_____

### IVAN LEVI ANDREW ZAPATA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**

**Midland County, Texas**

**Trial Court Cause No. CR53808**

### M E M O R A N D U M   O P I N I O N

Appellant, Ivan Levi Andrew Zapata, was indicted for the third-degree felony offense of deadly conduct by discharging a firearm. TEX. PENAL CODE ANN. § 22.05(b)(2), (e) (West 2019). The State charged Appellant as the principal actor and as a party to the offense. Following a jury trial, Appellant was convicted of the offense as charged in the indictment, and the jury assessed Appellant's punishment

at eight years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly. On appeal, Appellant raises a single issue: that the evidence is insufficient to support his conviction. We affirm.

## I. *Factual Background*

Appellant was a student at Premier High School in Midland. During lunchtime on May 13, 2019, Appellant and two of his classmates, Christopher Besaw and Andres Villa, discussed playing a prank on their teacher, Mary Berryhill. As their senior prank, Besaw suggested "chalking [Berryhill's] car" or "egg[ing] her house." Villa testified that Appellant said, "[o]r [they] could shoot it up." At some point during the conversation, Villa shared with Appellant the name of the street where Berryhill lived. Appellant commented that he would "remember that."

In her home later that night, Berryhill was suddenly awakened by a "horrific" noise. Her husband left their bedroom first to investigate what caused the sound. They noticed glass shards scattered everywhere and three bullet holes in the front door. Realizing that someone had shot at their home, Berryhill next checked on their children, who were still sleeping in their rooms. Berryhill testified that some bullets had struck their children's bedrooms including approximately one and one-half feet above her daughter's head. After Berryhill confirmed that no one was injured, she then called 9-1-1.

Sometime after 10:00 p.m. the same night, Appellant messaged Villa on social media and admitted to discharging a firearm at Berryhill's home eleven times; he told Villa that he "did it with the 9." Villa testified that Appellant's comment referred to a 9mm handgun. Villa also testified that a few weeks prior, Appellant sent him pictures via social media of three weapons—an AR-15, a "Judge," and a 9mm handgun. Villa stated that because he was concerned by Appellant's

2

comments, he messaged Appellant a picture of Berryhill's daughter's vehicle to verify if Berryhill was okay; however, there was no response. The morning after shooting at Berryhill's home, Appellant did not appear at school.

Appellant's cousin, Julisa Perez, testified that Appellant and his friend, Daniel Campa—both of whom lived with Perez at the time—were present at her house on the night of the incident. Sometime after 10:00 p.m. that night, Appellant asked if he could borrow Perez's silver Kia Forte. Perez agreed and gave Appellant the keys to her vehicle. Perez testified that she believed that Appellant was the driver of the vehicle that night. At about 1:00 a.m., Perez called Appellant and Campa to inquire as to their whereabouts; the two eventually returned to her residence around 2:00 a.m. Perez testified that Appellant stayed home from school that morning.

On the night of the incident, Officer Chane Blandford of the Midland Police Department arrived at Berryhill's home at approximately 11:00 p.m.; he investigated and documented the presence of numerous bullet holes in and around the Berryhill's home. Officer Blandford testified that the perpetrator likely fired a weapon from inside a vehicle because no shell casings were recovered, and that this appeared to be a "targeted" incident because no other homes in the area were struck by bullets that night. A neighbor provided the investigating officers with audio and video footage from their home security camera that was situated in the direction of the roadway in front of the Berryhill residence. On the home security video, eleven gunshots could be heard before a light-colored vehicle was captured on the video driving past the neighbor's home. The neighbor testified that, based on the position of the vehicle in the video footage, the shooter would have discharged their weapon from the passenger side of the vehicle toward Berryhill's residence.

Two days after the incident, a local news station aired a video excerpt of the Berryhill's home being shot. Perez noticed that when the video clip of the incident aired on their television, Appellant and Campa appeared nervous and left the room.

During the ensuing police investigation, Appellant and Campa soon became suspects. On May 21, 2019, as part of the investigation, Sergeant Jason Claire of the Midland Police Department was searching for a small silver vehicle. After he had flagged down several vehicles with similar descriptions, he stopped a vehicle matching the same description; Perez was operating this vehicle. Sergeant Claire then seized Perez's silver Kia Forte for purposes of the investigation.

After the vehicle was impounded, crime scene specialist Kashmiere McGee collected and photographed evidence that was found inside Perez's vehicle. McGee also used a gunshot residue (GSR) kit to collect GSR, which she sent to a forensic laboratory in Tarrant County for analysis. Anne Koettel, a senior trace evidence analyst at the Tarrant County Medical Examiner's Office analyzed the contents of the GSR kit and concluded that the samples collected from the inside of the passenger door—as well as the driver's seat and steering wheel—contained characteristics of primer gunshot residue. Koettel testified that one explanation for these results would be that a person inside the vehicle had discharged a firearm from outside the passenger window.

Appellant was indicted and later convicted of the offense. Perez testified that she had received three separate phone calls from Appellant before Appellant's trial commenced. During these phone calls, Appellant told Perez "not to mess things up for him," and that she did not have to testify if she did not want to.

## II. *Standard of Review – Sufficiency of the Evidence*

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the

standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence

5

directly prove the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

## III. *Analysis*

In his sole issue, Appellant contends that the evidence is insufficient to support his conviction.[1] Specifically, Appellant contends that the evidence is insufficient because the State failed to prove beyond a reasonable doubt that (1) Appellant knowingly discharged a firearm at a habitation and was reckless as to whether the habitation was occupied at the time the firearm was discharged, and (2) Appellant solicited, encouraged, directed, aided, and attempted to aid Campa to knowingly discharge a firearm at or in the direction of a habitation.

A person commits the offense of deadly conduct if he knowingly discharges a firearm at or in the direction of a habitation and in doing so is reckless as to whether the habitation is occupied at the time the firearm is discharged. PENAL § 22.05(b)(2). A person is criminally responsible as a party to an offense if the offense is committed

---

[1]In his brief, Appellant refers to challenging both the legal and factual sufficiency of the evidence. The Court of Criminal Appeals in *Brooks* held that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 895; *see also Jackson*, 443 U.S. at 319.

as a result of his own conduct, the conduct of another for whom he is criminally responsible, or both. *Id.* § 7.01(a) (West 2021). In relevant part, a person is criminally responsible for an offense that is committed by the conduct of another if he acts with the intent to promote or assist the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

To convict the accused of the offense, the jury is not required to unanimously agree as to whether the accused was the principal actor or a party for accountability purposes. *Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011) (Section 7.02 "describe[s] alternative manners by which an accused may be held accountable for the conduct of another who has committed the constituent elements of a criminal offense, but they in no way define the offense itself."). This is so even when there is compelling evidence that an accused is guilty of every constituent element of the charged offense as either a principal actor *or* as a "party" to the charged offense, but there are evidentiary concerns with respect to his precise role in the commission of the offense. *See id.* Thus, to prove the offense of deadly conduct by discharging a firearm as charged in this case, the State was required to prove beyond a reasonable doubt that either (1) Appellant was the shooter—that he knowingly discharged a firearm at or in the direction of Berryhill's home and acted recklessly to the occupants of the home in doing so, or (2) Campa was the shooter and Appellant assisted him in committing the offense—Appellant solicited, encouraged, directed, aided, or attempted to aid Campa in the commission of the offense. PENAL §§ 7.01–.02, 22.05(b)(2).

A. *Principal Actor*

To support Appellant's conviction as a principal actor under Section 22.05(b)(2), there must be sufficient evidence for the jury to find beyond a

7

reasonable doubt that Appellant was the shooter, in that he "knowingly" discharged a firearm at or in the direction of Berryhill's home and was "reckless" as to whether the home was occupied. *Id.* § 22.05(b)(2). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). "A person acts recklessly . . . when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). The risk created "must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* Recklessness requires that the defendant must actually foresee the risk involved and consciously decide to ignore it. *Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007).

Despite Appellant's contentions that there was "plainly reasonable doubt inherent in the investigation as well as the trial," we conclude that there is sufficient evidence from which the jury could have reasonably inferred and found beyond a reasonable doubt that Appellant was the actual shooter. A jury may infer the intent or knowledge of an individual by any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)).

Perez testified that sometime after 10:00 p.m. on the day of the incident, Appellant asked to borrow her silver Kia Forte and that Appellant and Campa left together in her vehicle around the same time. Thus, while it is unclear whether Appellant was the driver or passenger of the vehicle, the evidence shows that

Appellant left Perez's home in her vehicle with Campa, and that the incident occurred approximately one hour later.

Villa testified that he had a conversation with Appellant about "pranking" Berryhill's home, and that during that conversation Appellant suggested they "shoot it up." According to Villa, later that night, after 10:00 p.m., Appellant messaged him on social media. Villa recalled his social media conversation with Appellant as follows:

APPELLANT: I did it.

VILLA: Did what?

APPELLANT: Berryhill.

VILLA: What are you talking about?

APPELLANT: I shot it . . . I shot up the house. . . . I shot it up eleven times.

VILLA: Was a Navigator outside?

APPELLANT: Don't worry about it.

Villa also testified that Appellant disclosed that he "did it with the 9," believing that Appellant was referring to a 9mm handgun. Previous social media messages between Villa and Appellant indicated that Appellant had access to a 9mm handgun.

Video footage obtained from a neighbor's home security camera that faced the street in front of Berryhill's home revealed that eleven gunshots could be heard before a light-colored vehicle drove past the neighbor's home. The neighbor testified that the passenger door of the vehicle in the video would have been facing Berryhill's home. The vehicle that Appellant borrowed from Perez on the night of the incident had evidence of gunshot residue on passenger side door, as well as the driver seat and steering wheel. The gunshot residue found on the passenger side of the vehicle is consistent with the video evidence, which shows the passenger side of

a vehicle facing Berryhill's home following the sound of gunshots. Even in the absence of the video and forensic evidence, Appellant admitted to Villa that he shot Berryhill's home eleven times, all of which was captured on the neighbor's home security footage. As such, a jury could reasonably have inferred and found that Appellant was the person who discharged a firearm at Berryhill's home and was thus the principal actor of the charged offense.

From this evidence, the jury could also have reasonably inferred and found that Appellant "knowingly" discharged the firearm *and* "recklessly" disregarded the occupants of the habitation. PENAL § 22.05(b)(2). Appellant was the one to suggest that he and his classmates shoot up Berryhill's home, and he later admitted to Villa that he did so. Appellant's admission that he discharged a firearm at Berryhill's home could permit the jury to reasonably infer and find that Appellant was the actual shooter, and that he acted knowingly when he discharged the firearm recklessly in accordance with his planned "prank."

A rational jury could also have determined that Appellant acted recklessly to the occupants of Berryhill's home when he discharged the firearm. When Villa asked Appellant if a "Navigator" (Berryhill's vehicle) was outside the home at the time of the incident, Appellant responded, "[d]on't worry about it." Berryhill testified that both her daughter's and husband's vehicles were parked outside their home on the night of the incident. Based on this testimony, the jury could have concluded that two vehicles were present outside the home at the time of the incident, indicating to a reasonable person that a home would likely be occupied if cars are parked outside at night. Further, Appellant's admission to Villa further indicates that Appellant intended to shoot at Berryhill's home and actively ignored the risk to others who may have been present inside the home when the firearm was discharged. As such, a reasonable factfinder could have reasonably determined that Appellant

10

acted recklessly because he could have actually foreseen the risk involved in shooting at an occupied home and he consciously decided to ignore it. *See Williams*, 235 S.W.3d at 751.

Appellant argues that finding him guilty beyond a reasonable doubt "does not appear to be a conclusion that ANY rational or reasonable trier of fact could reach." However, it is the jury's role to assess the credibility of the witnesses and to give the evidence its proper weight. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. If any inconsistencies or conflicting inferences in the evidence exist, we must presume that the factfinder resolved any conflict in favor of the verdict. *Merritt*, 368 S.W.3d at 525–26.

B. *Party Liability*

Although there is sufficient evidence from which a rational jury could have reasonably inferred and found and that Appellant was the person (the principal actor) who discharged a firearm at Berryhill's home, we also conclude that the evidence is equally sufficient from which the jury could have reasonably inferred and found that Appellant was guilty as a "party" to the charged offense. *See Leza*, 351 S.W.3d at 357.

As stated above, a jury may infer the intent or knowledge of a person by any facts which tend to prove its existence. *Hart*, 89 S.W.3d at 64. Evidence that Appellant was present at the time the offense is committed, alone, is not sufficient to convict him as a party to the offense. *Beier v. State*, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985). Rather, "[e]vidence is sufficient to convict the defendant under the law of parties where [the defendant] is physically present at the commission of the offense, and [he] encourages the commission of the offense either by words or other agreement." *Id.* at 3. To determine if a person was acting as a party to the offense, courts may look to events that occur before, during, and after the commission of the

offense, including the defendant's actions which show an understanding and common design to commit the prohibited act. *Id.* at 4 (citing *Medellin v. State*, 617 S.W.2d 229, 231 (Tex. Crim. App. 1981)).

While it is unclear as to *where* Appellant was located in the vehicle at the time the firearm was discharged, the jury could have reasonably inferred and concluded that Appellant was present in the vehicle because he admitted to Villa that he "shot up" Berryhill's home. Further, there was evidence presented which showed that, leading up to the events in question, Appellant (1) suggested to Villa and Besaw the idea of discharging a firearm at Berryhill's home, (2) had access to three different firearms including a 9mm handgun, and (3) asked to borrow Perez's vehicle—which resembled the vehicle depicted on the neighbor's home security footage and the interior of which later tested positive for gunshot residue. Perez also testified that she believed Appellant was the driver of the vehicle that night.

Finally, Appellant made multiple phone calls to Perez in an apparent attempt to influence her testimony or discourage her from testifying. Appellant's attempt to "tamper" with or influence Perez's testimony or her participation at trial is evidence of his "consciousness of guilt" of the charged offense, and the jury was entitled to consider such evidence and so infer in determining Appellant's guilt. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999). From the cumulative force of the evidence presented, the jury could have reasonably inferred and determined that there was a clear understanding and common design between Appellant and Campa to commit the indicted offense. *Beier*, 687 S.W.2d at 4; *Villa*, 514 S.W.3d at 232.

Consistent with the applicable standard of review, we have thoroughly reviewed all of the evidence in the light most favorable to the jury's verdict. As such, we conclude that the record before us contains sufficient evidence from which a rational jury could have inferred and found beyond a reasonable doubt that

Appellant was guilty of the offense of deadly conduct by discharging a firearm as charged. Accordingly, we overrule Appellant's sole issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

September 29, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.